NEIGER LLP
317 Madison Avenue, 21st Floor
New York, New York 10017
Tel.: (212) 267-7342
Fax.: (212) 918-3427
Edward E. Neiger, Esq.

*Counsel to Roy Babitt, Esq.,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| KEVIN C. DAVIS, | Case No. 09-16161 (SMB) |
| Debtor. | |

**NOTICE OF AMENDED MOTION OF ROY BABITT, ESQ., CHAPTER 7 TRUSTEE, TO TRANSFER VENUE OF AFFILIATED CHAPTER 7 CASE AND TO JOINTLY ADMINISTER CASES**

**PLEASE TAKE NOTICE**, that upon the annexed Amended Motion of Roy Babitt, Esq., the Chapter 7 Trustee (the "Chapter 7 Trustee") for Kevin C. Davis (the "Debtor"), by and through his counsel, Neiger LLP, the undersigned will move this Court before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, on the 27th day of July, at 10:00 A.M. (EST) or as soon thereafter as counsel may be heard, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 723, New York, NY 10004, for the transfer of the bankruptcy case of the Debtor's affiliate, Vulcan Advanced Mobile Power Systems, L.L.C. ("VAMPS"), to the Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. § 1412 and 1014(b) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), and for the joint administration of the Debtor's case and VAMPS' case in this Court, pursuant to Bankruptcy Rule 1015.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, must be in writing and filed with the Court and received by NEIGER LLP (Attn: Edward E. Neiger, Esq.), 111 John Street, Suite 800, New York, NY 10038, the attorney for the Debtor, before July 20, 2010 at 5:00 PM (EST).

Dated: New York, New York
      July 13, 2010

/s/ <u>Edward E. Neiger</u>
By: Edward E. Neiger, Esq.
**NEIGER LLP**
317 Madison Avenue, 21st Floor
New York, NY 10017
(212) 267-7342

*Counsel to Chapter 7 Trustee*

NEIGER LLP
317 Madison Avenue, 21st Floor
New York, New York 10017
Tel.: (212) 267-7342
Fax.: (212) 918-3427
Edward E. Neiger, Esq.

*Counsel to Roy Babitt, Esq.,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 7 |
|     KEVIN C. DAVIS, | Case No. 09-16161 (SMB) |
|             Debtor. | |

**AMENDED MOTION OF ROY BABITT, ESQ., CHAPTER 7 TRUSTEE**
**TO TRANSFER VENUE OF AFFILIATED CHAPTER 7 CASE**
**AND TO JOINTLY ADMINISTER CASES**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

Roy Babitt, Esq., the Chapter 7 Trustee (the "Chapter 7 Trustee") for Kevin C. Davis (the "Debtor"), by and through his counsel, Neiger LLP, hereby moves for the transfer of the bankruptcy case of the Debtor's affiliate, Vulcan Advanced Mobile Power Systems, L.L.C. ("VAMPS"), from the Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") to the Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. § 1412 and 1014(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). The Chapter 7 Trustee also moves for the joint administration of the Debtor's case and VAMPS' case

3

in this Court, pursuant to Bankruptcy Rule 1015. In support thereof, the Chapter 7 Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

1.      The Debtor's bankruptcy filing implicates the bankruptcy filing of VAMPS, an entity in which the Debtor owns a 23% ownership interest and a 41.1% right of distribution. The two cases share creditors and claims, as well as causes of action against common defendants.

2.      Although VAMPS' bankruptcy case was filed in the Delaware Bankruptcy Court, in fact, Delaware has no apparent connection to VAMPS other than its place of incorporation. VAMPS' books and records, president, primary witness, and main offices are located in New York. Litigation against the Debtor arising out of his ownership of VAMPS is pending in New York. VAMPS' main creditors are located in New York, or the New York tri-state area.

3.      Given the interconnectedness of the two bankruptcy cases, the Chapter 7 Trustee has determined that the most efficient and economical way to administer them is to seek a transfer of VAMPS' case to this Court, and to request that this Court jointly administer both.

## II.      JURISDICTION

4.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).

## III. BACKGROUND

5.      On October 15, 2009, the Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

6.      Pursuant to his testimony at one of the 341 Meetings of Creditors held in his case, described in detail below, the Debtor is a 23% indirect owner of VAMPS, and also owns a 41.4% right of distribution in that company.  Before filing for bankruptcy, the Debtor was embroiled in litigation over his allegedly fraudulent activities in connection with his management, operation and ownership of VAMPS.

7.      Two adversary proceedings were subsequently commenced against the Debtor in connection with that litigation.  The first adversary proceeding, *Gluckman v. Davis, Adv. Pro. No. 10-02826 (SMB)*, was commenced against the Debtor on February 16, 2010 by parties seeking a determination that their claims against the Debtor are non-dischargeable.  The plaintiffs' complaint alleged that the Debtor, along with other individuals with interests in VAMPS, had developed schemes to obtain money from the plaintiffs by advertising investment opportunities in mobile power plants called the "Vulcan Advanced Mobile Power System."  The complaint further alleged that these power plants were never constructed, and that the money collected from the plaintiffs was never returned.  The second adversary proceeding, *O'Hare v. Davis, Adv. Pro. No. 10-02883 (SMB)*, was commenced against the Debtor on March 4, 2010 by parties who were also seeking a determination that the claims they held against the Debtor are non-dischargeable.  Those parties alleged that the Debtor entered into a settlement agreement with the plaintiffs under which VAMPS and certain affiliated companies were to pay the plaintiffs $2 million, but failed to do so.

8.      VAMPS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware on February 12, 2010, Case No. 10-10442 (CSS).  On May 12, 2010, the Official Committee of Unsecured Creditors appointed in

VAMPS' bankruptcy case moved to convert the case to a Chapter 7 case, or alternatively, to dismiss the case. *See Motion of the Official Committee of Unsecured Creditors to Convert the Debtor's Chapter 11 Bankruptcy Case to Case under Chapter 7, or Alternatively, to Dismiss* [Docket # 20 in VAMPS' bankruptcy case]. Its basis for doing so was VAMPS' failure to file its Schedule of Assets and Liabilities, its Statement of Financial Affairs, its Initial Monthly Operating Report, or various Monthly Operating Reports due subsequently. The Creditors' Committee also pointed to testimony given by VAMPS' corporate representative at the 341 Meeting of Creditors stating that VAMPS has not been in operation since 2007, and has no ongoing operations, as further basis to convert or dismiss its case.

9.       On May 21, 2010, the U.S. Trustee in VAMPS' case filed a response to the Creditors' Committee's motion in which it agreed with the request to convert or dismiss VAMPS' case. *See The Acting U.S. Trustee's Response to the Motion of the Official Committee of Unsecured Creditors to Convert the Debtor's Chapter 11 Bankruptcy Case to a Case under Chapter 7, or Alternatively, to Dismiss, and the Acting U.S. Trustee's Cross Motion to Convert or Dismiss the Debtor's Chapter 11 Case)* [Docket # 24 in VAMPS' bankruptcy case].

10.      On June 1, 2010, the Delaware Bankruptcy Court entered an *Order Converting Chapter 11 Case*, in which it converted VAMPS' Chapter 11 case to a Chapter 7 case. [Docket # 32 in VAMPS' bankruptcy case.]

11. On June 18, 2010, the Chapter 7 Trustee filed in the Debtor's case a *Motion of Roy Babitt, Esq., Chapter 7 Trustee, to Transfer Venue of Affiliated Chapter 7 Case and to Jointly Administer Cases* [Docket # 77.] The proceedings in VAMPS' bankruptcy case were accordingly stayed, pursuant to Bankruptcy Rule 1014(b). At the hearing on the Chapter 7

Trustee's motion which took place on July 8, 2010, this Court requested more detailed information regarding the Debtor's ownership interests in VAMPS and the location of VAMPS' creditors. Accordingly, the Chapter 7 Trustee brings this *Amended Motion of Roy Babitt, Esq., Chapter 7 Trustee, to Transfer Venue of Affiliated Chapter 7 Case and to Jointly Administer Cases*.

## III. RELIEF REQUESTED

12.     Bankruptcy Rule 1014(b) and 28 U.S.C. § 1412 provide that when bankruptcy petitions commencing cases for a debtor and an "affiliate" under 11 U.S.C. § 101(2)(B)[1] are filed in different districts, the court in the district in which the first petition was filed may transfer one of the cases if such transfer would serve the "interest of justice" or "convenience of the parties." 28 U.S.C. § 1412[2]; Fed. R. Bankr. P. 1014(b).[3]

---

[1] 11 U.S.C. § 101(2)(B) defines the term "affiliate," in pertinent part, as
   (A) [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor … [or]

   (B) [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor ….

[2] 28 U.S.C. § 1412 provides as follows: "A district court may transfer a case or a proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

[3] Bankruptcy Rule 1014(b) implements 28 U.S.C. § 1412 in cases where petitions are pending for a debtor and an affiliate by providing:
   If petitions commencing cases under the Code are filed in different districts by or against … a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending … the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

13.     Notably, 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b) are written in the disjunctive, making transfer of venue appropriate *either* in the interest of justice *or* for the convenience of the parties.  *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest of justice rationale or the convenience of the parties rationale."). The decision to transfer bankruptcy venue is committed to this Court's discretion "based on an individualized case-by-case analysis of convenience and fairness."  *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).

14.     Under Bankruptcy Rule 1014(b) governing the procedure when petitions involving affiliated debtors are filed in different courts, a motion to transfer an affiliated debtor's bankruptcy case may be filed in the court in which the first debtor filed its bankruptcy petition. Here, the Debtor's case was filed in this Court on October 15, 2009, four months before VAMPS' case was filed in the Delaware Bankruptcy Court on February 12, 2010.  Accordingly, this Court has the authority to order that VAMPS' bankruptcy case be transferred from the Delaware Bankruptcy Court to this Court.

15.     As set forth in greater detail below, the Chapter 7 Trustee respectfully submits that (i) VAMPS and the Debtor are "affiliates" within the definition of 11 U.S.C. § 101(2)(B), that (ii) transferring VAMPS' bankruptcy case to this Court will serve the interest of justice, and that (iii)  transferring VAMPS' bankruptcy case to this Court will serve the convenience of the parties.

### A. **The Debtor and VAMPS are "Affiliates"**

16.     During his 341 Meeting of Creditors held on May 25, 2010, the Debtor testified that he owns a 23% indirect ownership interest in VAMPS.  Specifically, the Debtor testified as follows:

- The Debtor directly owns a 50% share of Vulcan Capital LLC ("Vulcan Capital"). (*See* May 25, 2010 Transcript ("5/25/10 Tr."), the relevant excepts of which are attached hereto as **Exhibit A**, at p. 12, line 22- p. 13, line 2; p. 19, lines 13-16; p. 21, lines 9-11; p. 24, lines 24-25.)[4]

- Vulcan Capital LLC, in turn, directly owns a 50% interest in Vulcan Power Group LLC ("Vulcan Power").  (*See* 5/25/10 Tr. at p. 24, lines 7-10.)

- Vulcan Power, in turn, directly owns a 92% interest in VAMPS.  (See 5/25/10 Tr. at p. 11, lines 6-19; p. 12, lines 6-15.)[5]

17.     Therefore, the Debtor owns approximately 23% of VAMPS.  (50% x 50%  x 92% = 23%).

---

[4] References are made to the page numbers and line embedded in the transcript, not the page numbers on the bottom of the transcript pages.
[5] The Debtor's 23% indirect ownership interest in VAMPS was actually calculated during his 341 Meeting of Creditors on May 25, 2010 as follows:
Q.      You own what percentage of Vulcan Power, 25 percent of Vulcan Power?
A.      Well, no, I own 50 percent of Vulcan Capital, LLC.
Q.      Which owns 50 percent of Vulcan Power Group, so that means you own 25 percent of Vulcan Power.
A.      Indirect, yeah.
Q.      If you own 50 percent of LLC and LLC owns 50 percent of Power, then you own 25 percent of Vulcan Power.
A.      Indirectly, yeah.
Q.      Indirectly.  Plus a little smidgen of Ajax?
A.      If you then go – what 25 percent of 92, is that the analysis?
Q.      Then you do 25 percent of 92 because Vulcan Power owns 92 percent of VAMPS.  So about 23 percent.
(*See* 5/25/10 Tr., p. 24, line22 – p. 25, line 13.)

18.     Furthermore, the Debtor testified at the same 341 hearing that Vulcan Capital made additional contributions to Vulcan Power, and would receive additional distributions accordingly.   In particular, Vulcan Capital invested 90% in Vulcan Power, and received distributions of 90%.  (*See* 5/25/10 Tr. at p. 16, lines 15-22 ("Under the limited liability company agreement, the rights to distributions follow capital accounts and Vulcan Capital, LLC has put in, I think, at least 9 of every $10 that's in Vulcan Power Group, so if there are distributions, it would be skewed that way.  The exact percentage, I can't tell you off the top of my head but I believe it's over 90 percent.")).[6]

19.     As detailed above in paragraph 16, the Debtor owns a 50% interest in Vulcan Capital.  Based on the Debtor's testimony in paragraph 18, Vulcan Capital is entitled to a 90% of the beneficial interest of Vulcan Power.  Vulcan Power, in turn, directly owns a 92% interest in VAMPS, as described in paragraph 16.  Therefore, the Debtor owns a 41.4% right of distribution in VAMPS.  (50% x 90% x 92% = 41.4%).

20.     A flow chart summarizing the Debtor's testimony during his 341 Meeting of Creditors, as detailed above, is attached hereto as **Exhibit B**.  This testimony demonstrates that the Debtor and VAMPS are "affiliates" under 11 U.S.C. § 101(2)(B).  Accordingly, VAMPS' case may be transferred to this Court, as such transfer would best serve the interest of justice and the convenience of the parties.

---

[6]   *See also* 5/25/10 Tr., p. 25, lines 16-24:

Q:      Do you know your distribution of Vulcan Power Group?
A:      No, I don't.
Q:      Give us a range.  It's definitely more than 50 percent, right?  Would you say it's 80 percent?
A:      Off the top of my head, I can't tell you.  What I can tell you is that Vulcan Capital has put in approximately 9 out of $10 that has been invested in Vulcan Power Group, so do the math from there.

**B. The Interests of Justice Require Transfer of VAMPS' Bankruptcy Case to this Court**

21.　　In considering the "interest of justice" rationale, this Court "applies a broad and flexible standard" and "considers whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *In re Enron Corp.*, 274 B.R. 327, at 343.

22.　　Specifically, the following factors are considered: (i) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) whether transfer would further the interests of judicial economy; (iii) whether the parties could obtain a fair trial in each of the possible venues; (iv) whether either forum has an interest in deciding the controversy; (v) whether the enforceability of any judgment would be affected by the transfer; (vi) whether the plaintiff's original choice of forum should be disturbed; and (vii) whether transfer will impact the learning curve. *See Dunmore*, 380 B.R. at 672; *Enron*, 274 B.R. at 344, 349. "The learning curve analysis involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue." *Enron*, 274 B.R. at 349.

23.　　All of these factors militate in favor of transferring VAMPS' bankruptcy case to this Court.

**i.　　Transferring VAMPS' Bankruptcy Case to this Court Will Promote Efficiency in Administering its Estate**

24.　　In order to ensure that emergency matters and hearings in VAMPS' bankruptcy case will be attended to on an expedient basis, it is necessary to transfer VAMPS' bankruptcy case to this Court, as VAMPS' president and principal decision-maker is located in New York.

25.     VAMPS' second amended bankruptcy petition (the "Petition"), attached hereto as **Exhibit C**, is signed by its president, Ford Graham.  According to VAMPS' List of Equity Security Holders and Corporate Ownership Statement annexed to its Petition, Mr. Graham works in Vulcan Power Group, L.L.C.'s offices located at 150 East 52nd Street, 11th Floor, New York, New York 10022.  Further, in VAMPS' *Response to Motion of the Official Committee of Unsecured Creditors to Convert the Debtor's Chapter 11 Bankruptcy Case to Case Under Chapter 7, or Alternatively, to Dismiss*, dated May 24, 2010 [Docket # 24 in VAMPS' Bankruptcy Case] ("*VAMPS' Response to Motion to Convert*"), attached hereto as **Exhibit D**, VAMPS made clear that Mr. Graham is "the sole person with the knowledge and institutional background necessary to complete [VAMPS' Schedules and Statement of Financial Affairs]." *See VAMPS' Response to Motion to Convert*, at p. 5.

26.     Accordingly, transferring VAMPS' bankruptcy case to the New York Bankruptcy Court would promote efficiency in administering VAMPS' estate, and will ensure that inability to travel will not be cited as an excuse to delay the proceedings.

## ii.     Transferring VAMPS' Bankruptcy Case to this Court Will Promote Judicial Economy

27.     Without question, the interrelatedness of VAMPS and the Debtor will give rise to duplicate claims against each, litigation involving both, and questions regarding which assets belong to which estate.  Transferring VAMPS' bankruptcy case to this Court will allow this Court to streamline the proceedings in each case, and to make one determination on the issues affecting each case.

28.     In particular, the following are just a few of the undesirable results that will be avoided if VAMPS' bankruptcy case is transferred to this Court:

a.  There is a very substantial likelihood that identical litigation over the allegedly fraudulent activities committed by the Debtor through his ownership, management and operation of the VAMPS will be commenced in VAMPS' bankruptcy case. Transfer of VAMPS' case to this Court will avoid inconsistent rulings on those issues by two different courts.

b.  VAMPS comprises the Debtor's primary asset. Transfer of VAMPS' case to this Court is therefore necessary to coordinate the distribution to creditors in each case.

c.  There are four overlapping creditors between the lists of the twenty largest creditors filed by VAMPS and the Debtor, and two of those creditors have filed claims in both cases.[7] Transfer of VAMPS' case to this Court would avoid the need for the overlapping creditors to protect their interests in two bankruptcies.

d.  In the same vein, transfer of VAMPS' case to this Court would avoid the need for creditors to review the pleadings filed, and attend the hearings, in both cases.

e.  The Chapter 7 Trustee and VAMPS share certain causes of action against the same defendants, including Mr. Graham. Transfer of VAMPS' case to this Court would streamline those proceedings and avoid a scenario where the Chapter 7 trustees in each case fight over the same assets for the same

---

[7] The four overlapping creditors are Michael Stewart; Daniel O'Hare; Susan Flannigan; and Plainville Electrical Products Company. Two of the creditors, Susan Flannigan and Plainville Electrical Products Company, filed claims in both cases.

creditors. Transfer of VAMPS' case to this Court will also avoid the possibility of this Court and the Delaware Court issuing inconsistent orders.

### iii. The Parties Will Obtain a Fair Trial in this Court

29.     Both this Court and the Delaware Bankruptcy Court have the capacity to handle VAMPS' bankruptcy case and provide a fair proceeding. However, the lawsuit underlying the adversary proceeding in the Debtor's case styled *Gluckman v. Davis, Adv. Pro. No. 10-02826 (SMB)*, based on the Debtor's alleged schemes to obtain money from the plaintiffs by advertising investment opportunities in VAMPS, is pending in the New York Supreme Court. In addition, another creditor, Susan Flannigan filed a *Motion for an Order Pursuant to Bankruptcy Rule 2004 and 9016 Directing the Examination of (1) the Debtor, (2) Plains Capital Bank and (3) Vulcan Capital Management, Inc.*, on November 23, 2009, in which Ms. Flannigan describes two actions against pending in the United States District Court for the Southern District of New York. [Docket # 22 in VAMPS' bankruptcy case.]

30.     Many issues in the adversary proceeding and Ms. Flannigan's actions are likely to be governed by New York law, and VAMPS' bankruptcy case will no doubt be affected by the outcome of those proceedings. Therefore, judicial economy would be better served if VAMPS' case were administered in this Court.

### iv. This Court Has an Overriding Interest In Presiding Over VAMPS' Bankruptcy Case

31.     New York is the venue which has the most overriding interest in VAMPS' bankruptcy case. VAMPS' offices are located in New York, its books and records are kept in

New York, and its main creditors reside there or close by. On the contrary, Delaware is simply the state in which the Debtor is incorporated.

32. To illustrate, on its Petition, VAMPS lists its street address as 150 East 52nd Street, 11th Floor, New York, New York. [Docket # 13 in VAMPS' bankruptcy case, attached hereto as **Exhibit C**.] As the Debtor testified at his 341 Meeting of Creditors on March 1, 2010, this location is the site where the books and records for VAMPS and its affiliated entities are stored. (*See* March 1, 2010 Transcript ("3/1/10 Tr."), relevant excepts of which are attached hereto as **Exhibit E**, at p. 18, lines 6-11; p. 32, 16-18.)

33. VAMPS also lists its "County of Residence or Principal Place of Business" on its Petition as New York. Moreover, both equity holders listed on VAMPS' List of Equity Security Holders and Corporate Ownership Statement are located at 150 East 52nd Street, New York, New York.

34. According to VAMPS' Petition, its primary creditors are also located in New York or in a neighboring state. Of the twenty largest creditors listed by VAMPS, none resides in Delaware. Eight creditors are located in New York or the New York tri-state area, including the three creditors that were appointed as the creditors' committee in VAMPS' case before it was converted to a Chapter 7 case.

**v. No Judgments will be Adversely Affected by the Transfer of VAMPS' Case to this Court**

35. The only judgment that VAMPS listed in its Petition is a $1,218,769.00 judgment held by AIG. VAMPS listed AIG's address at 70 Pine Street, New York, NY 10270.

36.     In addition, although listed as a creditor to a settlement in VAMPS' Petition, Ms. Flannigan describes her judgment against VAMPS for $470,890.55, obtained in the United States District Court for the Southern District of New York, in her *Motion for an Order Pursuant to Bankruptcy Rule 2004 and 9016 Directing the Examination of (1) the Debtor, (2) Plains Capital Bank and (3) Vulcan Capital Management, Inc.*, dated November 23, 2009.  [Docket # 22 in VAMPS' bankruptcy case, at p. 2.]

37.     AIG's judgment and Ms. Flannigan's judgment will not be adversely affected by transfer of VAMPS' case to the New York Bankruptcy Court; on the contrary, they will benefit by the transfer.

### vi.     VAMPS Has No Connection to Delaware that Would be Disturbed Upon Transfer to this Court

38.     Aside from its incorporation in the state of Delaware, VAMPS has not identified any connection it has with Delaware that would warrant its case being administered in that state. A motion to transfer venue will be granted in cases where the only connection that the debtor has with its choice of venue is its place of incorporation.  *See, e.g.*, *In re Dunmore*, 380 B.R. 663, 673 (transferring debtor's case from New York to California, holding that "Dunmore lacks any ties to New York, other than its recent incorporation in the state and its efforts to secure financing here.").

### vii.     Transfer of VAMPS' Case to this Court Will Not Require a Learning Curve

39.     Aside from converting VAMPS' Chapter 11 bankruptcy case to a Chapter 7 case on June 1, 2010, the Delaware Bankruptcy Court has not made any other substantive rulings.  In fact, the primary reason for converting the VAMPS' case to a Chapter 7 was because VAMPS

has failed to file its Schedule of Assets and Liabilities, its Statement of Financial Affairs, its Initial Monthly Operating Report, or various Monthly Operating Reports. Accordingly, little information has been disseminated in VAMPS' bankruptcy case.

40.     Very little progress has been made in the Delaware Bankruptcy Court as well. Since the Chapter 7 Trustee in this case initially filed his Motion to Transfer on June 18, 2010, less than three weeks after VAMPS' case was converted, the proceedings in VAMPS' case have been stayed. The second 341 meeting to take place in VAMPS' case has been adjourned to August 10, 2010, pending a determination on this Amended Motion to Transfer. Accordingly, transfer of VAMPS' case to this Court would not entail a learning curve.

**C. The Convenience of the Parties Would Best Be Served by Transfer of VAMPS' Bankruptcy Case to this Court**

41.     In considering the "convenience of the parties" rationale, the following six factors are considered: (i) the proximity of all creditors to the court; (ii) the proximity of the debtor to the court; (iii) the proximity of the witnesses necessary to the administration of the estate; (iv) the location of the assets; (v) the economic and efficient administration of the estate; and (vi) the necessity of ancillary jurisdiction if liquidation should result. *See Dunmore*, 380 B.R. at 676; *Enron*, 274 B.R. at 343, 345. The factor afforded the most weight is "the promotion of the economic and efficient administration of the estate." *Enron*, 274 B.R. at 343.

**i.     The Interested Parties in VAMPS' Case are Closest to New York**

42.     As stated above, none of VAMPS' listed creditors are located in Delaware. As reflected in VAMPS' Petition, attached hereto as **Exhibit C**, all three of the creditors which

formerly comprised VAMPS' creditors' committee are located in New York or Connecticut,[8] and another five creditors live in the tri-state area. The remaining creditors are dispersed among North Carolina, Texas, Illinois, Missouri, California and Florida. Certainly, the location of VAMPS' creditors warrants a transfer of VAMPs' case to this Court.

### ii. VAMPS Maintains Closest Proximity to New York

43. As stated above, VAMPS has not offered any connection with Delaware other than its incorporation there. On the contrary, in its Petition attached hereto as **Exhibit C**, VAMPS lists its street address as 150 East 52nd Street, 11th Floor, New York, New York. As the Debtor testified at his 341 Meeting of Creditors on March 1, 2010, this location is the site where the books and records for VAMPS and its affiliated entities are stored. (*See* 3/1/10 Tr. attached hereto as **Exhibit E**, at p. 18, lines 6-11; p. 32, 16-18.) VAMPS also lists its "County of Residence or Principal Place of Business" on its Petition as New York. Moreover, both equity holders listed on VAMPS' List of Equity Security Holders and Corporate Ownership Statement are located at 150 East 52nd Street, New York, New York. Clearly, New York is the more appropriate venue for VAMPS' bankruptcy case.

### iii. The Necessary Witnesses Are Located in New York

44. As VAMPS stated in its *Response to Motion to Convert*, "[t]hough it once had approximately 45 employees, [VAMPS] now has none." *See VAMPS' Response to Motion to Convert*, p. 2, attached hereto as **Exhibit D**. Further, VAMPS maintained that Mr. Graham is the

---

[8] Those creditors and their addresses are:
Susan Flanigan, c/o Marc A. Stadtmauer, Esq., Stadtmauer & Associates, 230 Park Avenue, New York, NY 10069;
TC Power, LLC, Attn: Eric Fraher, 5 Old Windsor Road, Bloomfield CT 06002; and
Plainville Electric Products Co., Attn: Joseph Nalley, 435 Lake Avenue, Bristol CT.

"sole person with the knowledge and institutional background necessary to complete [VAMPS' Schedules and Statement of Financial Affairs]." *See id.* at p. 5. Accordingly, Mr. Graham will undoubtedly constitute VAMPS' primary witness. Since Mr. Graham is located in New York, transfer of VAMPS' case to this Court is warranted.

### iv. VAMPS' Remaining Assets are not Located in Delaware

45. According to *VAMPS' Response to Motion to Convert*, "all of [VAMPS'] bank accounts are dormant and its only remaining assets are certain tools, pieces of equipment and office furniture associated with the mobile generators, which are currently stored in a warehouse in North Carolina that is leased and maintained by another Vulcan entity. [VAMPS] has not engaged in any business since the Petition Date…." *See VAMPS' Response to Motion to Convert*, p. 3.

46. Accordingly, VAMPS owns no assets in Delaware which would militate in favor of keeping its case there. On the contrary, VAMPS' connections with New York are far stronger, and militate in favor of transferring its case to this Court.

### v. Transferring VAMPS' Bankruptcy Case to New York Would Best Promote the Economic Administration of its Estate

47. As stated above, transferring VAMPS' bankruptcy case to this Court would best promote the economic and efficient administration of its estate. Mr. Graham, the primary witness and person with decision-making capacity in VAMPS' case, is located in New York, as are VAMPS' books and records. In addition, creditors in both VAMPS' and the Debtor's bankruptcy cases – located mainly in New York – could protect their interest by monitoring the proceedings in only one case, and attending hearings in the same location.

48.     Further, the proceedings in each case affecting the other case will be streamlined. Through the Debtor's testimony at multiple 341 meetings held in the Debtor's case, the Chapter 7 Trustee has learned about the purpose and operation of VAMPS and its affiliated entities. Transferring VAMPS' case to this Court will enable the Chapter 7 Trustee and VAMPS to coordinate their causes of action against the Debtor, Mr. Graham and other entities, instead of causing the Chapter 7 trustees to fight over the same assets for many of the same creditors.

49.     Transfer will also enable this Court can preside over the adversary proceedings against the Debtor arising out of his management, ownership and operation of VAMPS, while presiding over the proceedings in VAMPS' bankruptcy case, and will avoid duplicate or inconsistent orders by this Court and the Delaware Bankruptcy Court.

**vi.     Any Ancillary Administration Would Take Place in New York**

50.     There are currently a number of actions stayed against the Debtor arising out of his ownership, management and operation of VAMPS.  At least three of those actions – Ms. Flannigan's two actions, and the lawsuit underlying the adversary proceeding *Gluckman v. Davis, Adv. Pro. No. 10-02826 (SMB)* – are located in New York.  As there are no apparent proceedings against VAMPS in Delaware, this factor militates in favor of transferring VAMPS' case to this Court.

**C.     VAMPS' Bankruptcy Case Should be Procedurally
Consolidated with the Debtor's Case**

51.     Given the intertwined relationship between the Debtor and VAMPS, the Chapter 7 Trustee has determined that the most efficient and effective manner in which to administer their respective Chapter 7 cases is to seek an order authorizing joint administration with each other.

52.     Bankruptcy Rule 1015(b) makes clear that joint administration of cases may be appropriate when two or more affiliated debtor entities have filed for bankruptcy protection. Specifically, Bankruptcy Rule 1015(b) provides, *inter alia*:

> *Cases Involving Two or More Related Debtors*:  If a joint petition or two or more petitions are pending in the same court by or against … (4) a debtor and an affiliate, the court may order a joint administration of the estates.

53.     Further, Bankruptcy Rule 1015(c) provides that "[w]hen an order for consolidation or joint administration of a joint case or two or more cases is entered pursuant to this rule, while protecting the rights of the parties under the Code, the court may enter orders as may tend to avoid unnecessary costs and delay."

54.     As stated above, there is a very substantial likelihood that the parties who have commenced litigation against the Debtor in his bankruptcy case will commence identical litigation against VAMPS in its bankruptcy case.  In addition, the Chapter 7 Trustee in the Debtor's case shares causes of action with VAMPS against the same defendants.  Joint administration, therefore, would allow this Court to streamline the litigation in both cases by avoiding hearings on the same or similar issues in each case.  This would benefit all parties-in-interest by avoiding the need for them to review the pleadings in each bankruptcy case, as well as the additional time and expense of having to attend two hearings.  Joint administration would also avoid the potential for inconsistent rulings, as well as the problematic effects in each entity's Chapter 7 case that could occur if each debtor were implicated in the litigation in the other's case.

55.     At this time, the Chapter 7 Trustee is not requesting the substantive consolidation of the Debtor's case with VAMPS' case.  In the event the Chapter 7 Trustee seeks a substantive

consolidation of the assets and liabilities in the Debtor's case and VAMPS' case, the Chapter 7 Trustee will bring such a motion.

56.     Rather, the Chapter 7 Trustee simply seeks the following procedural relief:

   a.   VAMPS and the Debtor shall be instructed to use the docket in Case No. 09-16161 (SMB), that is currently being used by the Debtor, for all administrative matters, including a listing of claims filed, as well as for the lodging, filing and docketing of pleadings and orders;

   b.   VAMPS and the Debtor shall be instructed to combine notices to creditors and parties-in-interest;

   c.   VAMPS and the Debtor shall be instructed to schedule joint hearings; and

   d.   The docket in Case No. 09-16161 (SMB) shall bear the following caption:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| KEVIN C. DAVIS and VULCAN ADVANCED MOBILE POWER SYSTEMS, L.L.C., | Case No. 09-16161 (SMB) |
|                         Debtors. | (Jointly Administered) |

## IV. WAIVER OF MEMORANDUM OF LAW

57.     Pursuant to Pursuant to Local Bankruptcy Rule 9013-1(a) for the Southern District of New York, because there are no novel issues of law presented herein and the relevant citations of law have already been cited, the Chapter 7 Trustee respectfully requests that this Court waive the requirement that the Chapter 7 Trustee file a memorandum of law in support of this Motion.

## V. NOTICE

58.     Notice of this Amended Motion has been given to (a) counsel for the Debtor; (b) counsel for VAMPS; (c) the U.S. Trustee in both bankruptcy cases; (d) the Chapter 7 Trustee in VAMPS' bankruptcy case; (e) the parties on the list of top twenty unsecured creditors filed by the Debtor; (f) the parties on the list of top twenty unsecured creditors filed by VAMPS; (g) all parties that have filed a notice of appearance in the Debtor's case; and (h) all parties that have filed a notice of appearance in VAMPS' bankruptcy case.  The Chapter 7 Trustee submits that no other or further notice need be provided.

**WHEREFORE** the Chapter 7 Trustee respectfully requests that the Court enter an Order in substantially the form annexed hereto as **<u>Exhibit F</u>** transferring venue of VAMPS' case to this Court, and jointly administering VAMPS' case with the Debtor's case; and for such other and further relief as this Court may deem appropriate.

Dated: New York, New York
        July 13, 2010

/s/ <u>Edward E. Neiger</u>
By:  Edward E. Neiger, Esq.
**NEIGER LLP**
317 Madison Avenue
New York, NY 10017
(T) (212) 267-7342
(F) (212) 918-3427

*Counsel to Roy Babitt, Esq.,*
*Chapter 7 Trustee*

23